UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TOYOTA JIDOSHA KABUSHIKI KAISHA, also doing business as TOYOTA MOTOR CORPORATION, and TOYOTA MOTOR SALES, U.S.A., INC., | § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § § | Case No. 4:18-cv-00908 |
| | § | JURY DEMANDED |
| PARTSITES, LLC, and SCOTT ANDERSON | § § § | |
| Defendants. | § | |

**PLAINTIFF' COMPLAINT AND REQUEST FOR
PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Toyota Jidosha Kabushiki Kaisha, also doing business as Toyota Motor Corporation, and Toyota Motor Sales, U.S.A., Inc. (collectively "Toyota"), file this Complaint against Defendants Partsites, LLC ("Partsites"), and Scott Anderson ("Anderson") (collectively, "Defendants"), and allege as follows:

## SUMMARY OF THE COMPLAINT

1.      This is an action for willful trademark infringement, unfair competition, cyberpiracy, false advertising, and trademark dilution, under the United States Trademark (Lanham) Act, 15 U.S.C. § 1051, *et seq.* (as amended); trademark dilution under Texas Business and Commerce Code § 16.103, and trademark infringement and unfair competition under Texas common law.  Toyota's claims arise from Defendants' unauthorized use of Toyota's distinctive, well-known and famous TOYOTA trademarks on websites and in several domain names in

connection with the online services, including information concerning, and the marketing and sale of replacement parts and accessories for Toyota vehicles, and related services, and Defendants' false and misleading statements that they are a Toyota "authorized" parts distributor, when they are not. As a result of such willful conduct and bad faith, Toyota seeks a preliminary and permanent injunction, a transfer of the at-issue domains to Toyota, and the recovery of actual damages, profits, costs, attorneys' fees and other such relief as more fully set forth herein.

## THE PARTIES

2. Plaintiff, Toyota Jidosha Kabushiki Kaisha, also doing business as Toyota Motor Corporation ("Toyota's Corporate Parent"), is a Japanese corporation having its principal offices at 1, Toyota-cho, Toyota-shi, Aichi-ken, 471-8571 Japan.

3. Plaintiff, Toyota Motor Sales, U.S.A., Inc. ("Toyota Motor Sales"), is a California corporation with its principal business address at 6565 Headquarters Drive, Plano, Texas 75024-5965. Toyota Motor Sales is a wholly owned subsidiary of Toyota's Corporate Parent and the exclusive importer and distributor of TOYOTA® vehicles and parts in the United States, making Texas the company's principal place of business in the United States ("Toyota's Corporate Parent" and Toyota Motor Sales are individually and collectively referred to herein as "Toyota").

4. On information and belief, defendant, Partsites, LLC ("Partsites") is a Florida limited liability company, with a principal business address of 175 SW 7th Street, Unit 1704, Miami, Florida 33130. The registered agent for Partsites is David Lemoie at the same address.

5. On information and belief, defendant, Scott Anderson ("Anderson") is an individual residing at 175 SW 7th Street, Unit 1704, Miami, Florida 33130. On information and belief, Anderson is the President and CEO of defendant, Partsites, LLC. On information and

belief, Anderson is the principal officer and owner of Partsites, who supervises and controls the unlawful activities engaged in by Partsites and has a direct financial interest in such unlawful activity.  On information and belief, Anderson had knowledge or reason to know of the unlawful activities engaged in by Partsites and took actions which contributed to its unlawful activities as set forth herein.

## SUBJECT MATTER JURISDICTION

6.      The First, Second, Third, Fourth, and Fifth Causes of Action arise under the United States Trademark (Lanham) Act of 1946, as amended, 15 U.S.C. §§ 1051-1127. Jurisdiction in this Court over these causes of action is proper pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332 and 1338. The parties are of diverse citizenship and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs.

7.      The Sixth, Seventh and Eighth Causes of Action arise under Texas statutory and common law and are substantially based upon the same operative facts as the First through Fifth Causes of Action.  Jurisdiction in this Court over the Sixth, Seventh and Eighth Causes of Action is proper on the basis of supplemental jurisdiction under 28 U.S.C. § 1367(a).

## PERSONAL JURISDICTION

8.      Personal jurisdiction over Defendants is proper under the laws of the State of Texas, including its long-arm statute, pursuant to Rule 4 of the Federal Rules of Civil Procedure and under the Due Process Clause of the Fourteenth Amendment to the Federal Constitution.  On information and belief, Defendants have regularly and systematically conducted business targeting and/or within the State of Texas or the United States affecting Toyota within the State of Texas;  Defendants either reside or are doing business within this district; and/or Defendants have engaged in intentional tortious conduct within this district, and/or have engaged in

intentional tortious conduct outside the State of Texas, which they knew would cause and has caused harm and injury to Toyota within this jurisdiction.

9.     On information and belief, Defendants have regularly and systematically conducted business within the United States, having an effect on Toyota in the State of Texas, by soliciting consumers in the United States based, in part, on their illegitimate registration of the following domain names and operation of several interactive websites at: *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; ToyotaPartsEStore.com; 1stToyotaParts.com; Toyota.PartsWebsite.com; and Partsites.com*, as discussed more fully below.   On information and belief, Defendants, through their unlawful domain name registrations and interactive websites, are making unauthorized use of Toyota's distinctive, well-known and famous TOYOTA trademarks, in connection with the marketing, advertising, promotion, offer for sale and sale of Toyota parts and accessories and/or in connection with the offering of services, including, but not limited to, (i) providing information concerning Toyota motor vehicles and their parts, and  (ii) relating to the development of e-commerce platforms for the sale of automotive parts, all without Toyota's authorization, approval or permission. On information and belief, the following illegitimate domain names and interactive websites at *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; ToyotaPartsEStore.com; 1stToyotaParts.com; and Toyota.PartsWebsite.com* provide product specifications, pricing and enable consumers to place orders and purchase such parts and accessories.  On information and belief, the interactive website at *Partsites.com*, which prominently shows the mark TOYOTA and uses Toyota's red corporate color, also provides information regarding Defendants' services for developing online ecommerce sites for marketing and sale of automotive parts, and includes a

chat feature on the site, which enables potential customers to speak directly with Defendants concerning the Defendants' services.

10.     On information and belief, Defendants' unlawful domain name registrations, interactive sites and pages enable consumers throughout the United States, including Texas, to place orders and purchase TOYOTA products purportedly from a Toyota "authorized" parts dealer.  On information and belief, these interactive websites and pages display the TOYOTA logos, marks and red color to consumers throughout the United States, including Texas.

11.     On information and belief, Anderson controlled and facilitated the unauthorized marketing, promotion and sale of Toyota parts by Partsites through these sites for his own financial gain and is identified as or responsible for the registration of domain names that include the mark TOYOTA and infringe and cybersquat upon Toyota's trademark rights as discussed in greater detail below.

12.     On information and belief, these sites are up and running twenty-four hours a day, seven days a week. These sites are accessible to consumers throughout the United States, including consumers in Texas. On information and belief, Defendants have sold Toyota replacement parts and accessories and/or provided services relating to the development of e-commerce platforms for the sale of automotive parts to non-parties in Texas.

13.     On information and belief, Defendants were well aware, knew, or should have known of Toyota's business, including where it does business and that unapproved use of its trademarks would harm Toyota in Texas as Defendants had previously received written notice of Toyota's objections to such unlawful activities by Defendants.

14.     Indeed, on information and belief, Defendants' registration and use of these domain names and the unauthorized use of Toyota's trademarks on these websites and/or in these

domains was intentionally directed at Texas residents and undertaken intentionally with the knowledge that such actions were likely to cause confusion, dilution, cybersquatting and misappropriation of the famous TOYOTA brand, and would impact and harm Toyota's business in Texas causing irreparable injury to Toyota within the United States and this district.

## VENUE

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that Defendants regularly conduct business in this district and/or a substantial part of the claims arose in this district.

## TOYOTA'S BUSINESS AND TRADEMARKS

16.     Toyota is a leading manufacturer, marketer, distributor and seller of automotive vehicles in the United States under the brand name and mark TOYOTA®, with its U.S. headquarters in Plano, Texas. As of 2017, Toyota was the world's second-largest automotive manufacturer and the world's first automobile manufacturer to produce more than 10 million vehicles per year which it has done since 2012, when it also reported the production of its 200-millionth vehicle.  Toyota, which earlier was the world's third largest automotive manufacturer behind American General Motors and Ford, produced for the first time in history more vehicles than Ford in 2005, and in 2006 even more than General Motors, and has been the world's largest automotive manufacturer since then, except in 2011.

17.     For over 60 years, since at least as early as March 1958, Toyota, either directly or through its related entities and subsidiaries, has been continuously using the mark TOYOTA® and variants, in connection with the importation, distribution, manufacture, marketing and sale of automobiles, automobile parts, and related accessories and services in the United States. Further,

for over 25 years, since at least as early as April 1990, Toyota has been using its proprietary T Logo® in connection with such products and services in the United States:



18.     Toyota's strong commitment to the United States is confirmed by its 10 plants, 1,500 dealerships, 137,000 dedicated U.S. employees and approximately 25 million vehicles built in the U.S. alone.

19.     Toyota and its authorized automotive dealers in the United States have consistently and continuously used the TOYOTA® mark, along with Toyota's proprietary T Logo®, in a distinct stylized font and often in combination with its corporate color red, in connection with the marketing and sale of automobiles, automotive parts and accessories, since well before the acts of the Defendants complained herein.   Representative examples of such marks are shown below:



20.     These marks, including, TOYOTA, the T Logo and Toyota red color, are and have been for many years prominently featured in Toyota's marketing, advertising and promotions, as well as those of its authorized dealers and licensees, and such designations appear on all genuine TOYOTA® parts and accessories and/or the packaging therefor.

21.     Since at least as early as January 1995, Toyota has owned and operated a website at www.toyota.com, which provides information about TOYOTA® vehicles and related products

and services and is operational 24 hours a day 7 days a week.  Further, for over 10 years, Toyota has owned and operated the website available at the URL https://parts.toyota.com, through which Toyota advertises TOYOTA® branded parts and accessories and makes such products available for purchase online through Toyota's authorized dealers. These sites serve as an important resource for the general public and receive hundreds of thousands of "hits" or visits each day by consumers throughout the United States. Toyota spends millions of dollars each year operating and maintaining such websites.

22.     In addition to Toyota's extensive common law use and trademark rights, Toyota's Corporate Parent owns several trademark registrations in the United States for its famous TOYOTA® mark, as well as various design marks, including the T Logo®, for automotive related goods and services. Toyota's federal trademark registrations include, but are not limited to the following:

| Mark | Reg. No. | Reg. Date | Goods/ Services |
|------|----------|-----------|-----------------|
| TOYOTA (Stylized) **TOYOTA** | 843138 | January 30, 1968 | (Int'l Class: 019) automobiles and motor trucks |
| TOYOTA | 2848004 | June 1, 2004 | (Int'l Class: 42) providing information on vehicles on the internet |
| TOYOTA | 1338339 | May 28, 1985 | (Int'l Class: 36) financing the purchases of vehicles by others (Int'l Class: 39) vehicle renting and leasing services |
| TOYOTA | 1589552 | April 3, 1990 | (Int'l Class: 01) brake fluid and transmission fluid for use in motor vehicles (Int'l Class: 04) lubricating oils and lubricating greases for use in motor vehicles |
| T & Design | 1797716 | October | (Int'l Class: 12) |

| Mark | Reg. No. | Reg. Date | Goods/ Services |
|---|---|---|---|
|  | | 12, 1993 | automobiles and structural parts thereof |
| TOYOTA | 1698252 | June 30, 1992 | (Int'l Class: 01)<br>engine coolant and engine antifreeze for use in motor vehicles |
| TOYOTA | 1721365 | October 6, 1992 | (Int'l Class: 06)<br>parts and components made of metal for automobiles, trucks, and automotive vans [full listing in attached Exhibit of the Certificates of Registration]<br>(Int'l Class: 07)<br>parts and components for automobiles, trucks, and automotive vans; [full listing in attached Exhibit of the Certificate of Registration]<br>(Int'l Class: 08)<br>hand tools; [full listing in attached Exhibit of the Certificates of Registration]<br>(Int'l Class: 09)<br>parts and components for automobiles, trucks, and automotive vans; namely, thermostatic valves, computers and computer assemblies; … [full listing in attached Exhibit of the Certificates of Registration]<br>(Int'l Class: 11)<br>parts and components for automobiles, trucks, and automotive vans; namely, cool boxes, and accessories therefor; [ ice maker kits; stoves and parts thereof; ] air conditioning systems;… [full listing in attached Exhibit of the Certificates of Registration]<br>(Int'l Class: 12)<br>parts and components for automobiles, trucks, and automotive vans; namely, main bodies and components thereof; rear short body assemblies, rear long body assemblies; mouldings, being body parts; ….[full listing in attached Exhibit of the Certificates of Registration]<br>(Int'l Class: 14)<br>parts and components for automobiles, trucks, and automotive vans; namely, clocks and parts thereof<br>(Int'l Class: 17) |

9

| Mark | Reg. No. | Reg. Date | Goods/ Services |
|---|---|---|---|
| | | | parts and components for automobiles, trucks, and automotive vans; namely, gaskets, gasket kits, boots, boot kits, seals, tubing, o-rings, diaphragms, thermal insulators, hoses, plastic knobs, packing coil<br>(Int'l Class: 27)<br>parts and components for automobiles, trucks, and automotive vans; namely, floor mats, carpets |
| T & Design<br> | 1895321 | May 23, 1995 | (Int'l Class: 36)<br>financing the purchases and leasing of automotive vehicles by others<br>(Int'l Class: 37)<br>repair and maintenance service for automotive vehicles<br>(Int'l Class: 39)<br>automotive vehicle leasing and renting services |
| TOYOTA | 1888870 | April 11, 1995 | (Int'l Class: 37)<br>repair and maintenance services for automotive vehicles |
| TOYOTA | 2115623 | November 25, 1997 | (Int'l Class: 12)<br>vehicle anti-theft systems comprising radio frequency transmitters, radio frequency receivers, status monitors, glass breakage sensor units, electronic control units, dashboard signal lights, vehicular horn activators, vehicular light activators, and dashboard control switches, in various combinations of components, sold as a unit and individually as repair or replacement parts |
| T & Design<br> | 2567014 | May 7, 2002 | (Int'l Class: 12)<br>automobile airbag systems comprising the airbag cover, airbag and inflater |

23.     The above listed registrations are valid, subsisting, unrevoked and incontestable pursuant to 15 U.S.C. § 1065, and thus constitute *prima facie* evidence of the validity of marks and their registration; Toyota's exclusive ownership of these marks; and Toyota's exclusive right

to use such marks on or in connection with the products/services stated in the registrations. Copies of Toyota's certificates of registration and status pages from the USPTO confirming the validity of the foregoing registrations are attached hereto as "**Exhibit 1**", and these registrations along with Toyota's common law rights in the TOYOTA mark, the T Logo and variants are hereinafter referred to individually and/or collectively as the "TOYOTA Marks", unless otherwise specified.

24.     Toyota, either directly or through its authorized licensees, has extensively and continually used, advertised and promoted the TOYOTA Marks in interstate commerce throughout the United States for decades, specifically, over 60 years for the TOYOTA mark and over 25 years for the T Logo. Substantial amounts of time, effort, and money have been expended over the years ensuring that relevant consumers and the general purchasing public associates the TOYOTA Marks exclusively with Toyota. Indeed, over the last 5 years alone, Toyota has expended significant amounts of dollars each year in connection with marketing, advertising and promoting the prestigious TOYOTA Marks, including, TOYOTA, the T Logo and red color, in connection with its motor vehicle products and services within the United States and around the globe. Toyota uses the TOYOTA Marks to identify and distinguish its distinctive, high-quality motor vehicles, parts, products and services, and related products and services, from those of others.

25.     The TOYOTA Marks have been prominently presented and featured on or in connection with millions of Toyota vehicles, parts and accessories, in advertisements, informational literature, on business signage, in national advertising campaigns, television and radio commercials airing many times each day, print and digital ads, social media, billboards and in other promotional materials widely distributed, accessed and/or viewed throughout the United

States and within this judicial district.  Toyota's promotional efforts also include millions of direct mail solicitations distributed to the general public, hundreds of millions of statements and statement "stuffers" distributed to TOYOTA vehicles owners, signage on thousands of dealerships and repair shops, and other common reminders of the TOYOTA Marks, which are encountered each day by consumers and potential purchasers of TOYOTA products and services. By way of further example, since 2013, Toyota has sponsored the Major League Soccer team, FC Dallas, and Toyota Stadium, in Frisco, Texas, with a 20,500-seat capacity.  Toyota Stadium is also the future home of the National Soccer Hall of Fame with an opening ceremony occurring in Winter 2018.  In 2017, Toyota also sponsored the Dallas Holiday Parade, which was in jeopardy of being cancelled absent sponsorship.  Toyota has also donated millions of dollars to schools to support educational efforts across the United States, including but not limited to 1 million dollars to Plano ISD's STEAM Academy High School, and non-profits in the areas of mobility, financial inclusion, driver/passenger safety, STEM education, and environmental sustainability. All of the foregoing promulgating in hundreds of millions, if not billions, of commercial impressions on consumers and the general public throughout the United States over the many decades of use of the TOYOTA Marks, reinforcing their notoriety and distinctiveness.

26.     As a result of the above, and the care and skill exercised by Toyota in the sale of its many products and services, the supervision and control exercised by Toyota over the nature and quality of the services and products offered under its TOYOTA Marks, and the extensive advertising, sale and public acceptance thereof, the TOYOTA Marks have acquired outstanding celebrity symbolizing the immense goodwill that Toyota has created throughout the United States and within this judicial district.

27.     Toyota has achieved an excellent reputation in the manufacture, marketing and sale of its TOYOTA automobiles, automotive parts and accessories and related services, and enjoys a substantial demand for its products and services.  The tremendous commercial success of Toyota's products and services for nearly 60 years is due, in large part, to widespread and varied advertising and marketing featuring the TOYOTA Marks by Toyota, resulting in billions of dollars in sales over the years.  Together with its reputation for excellence, Toyota has built up tremendous goodwill in the TOYOTA Marks, and established an enormous level of public acceptance and consumer recognition of the TOYOTA brand, which became a famous household brand long before Defendants began violating Toyota's exclusive trademark rights.  Indeed, the TOYOTA Marks are inherently distinctive, have acquired tremendous commercial strength and possess very strong secondary meaning in the minds of the purchasing public, and are famous and serve uniquely to identify Toyota's automobiles, automotive parts and accessories and related services.  It should come as no surprise that the TOYOTA Marks have become assets of incalculable value as symbols of Toyota's products and services.  In 2017 and 2018, the TOYOTA brand was ranked the 7th most valuable of the top 100 Best Global Brands ranked by Interbrand, a global brand agency and part of the Omnicom Group Inc.; this was ahead of Mercedes-Benz, Honda, Ford and other automobile manufacturers. No other automotive company was ranked higher.

28.     Toyota also exercises great care in the selection of its authorized dealers and licensees and exerts substantial effort to control the nature and quality of the goods and services provided by such dealers and licensees under the TOYOTA Marks, who are not permitted to engage third parties like the Defendants to market and sell Toyota products using the TOYOTA Marks.

29.     No entities other than Toyota and its authorized dealers and licensees are authorized to use the TOYOTA Marks in connection with the manufacture, marketing, sale, distribution or advertising of Toyota's original automotive products and related services in the United States.

30.     The Defendants are not authorized or licensed by Toyota to use the TOYOTA Marks or any confusingly similar marks in the United States or elsewhere.

### DEFENDANTS' WRONGFUL ACTIONS

31.     On information and belief, long after Toyota began using the TOYOTA Marks and after it had registered such marks, Defendants began advertising, marketing and selling automobile replacement parts and accessories for TOYOTA vehicles in direct competition with Toyota and its dealers under the TOYOTA Marks, including, TOYOTA and the T Logo often in the color red, the corporate color of Toyota:







32.     On information and belief, Defendants have, at different points in time, registered, owned and/or operated, without authorization or permission from Toyota, several domain names which redirect traffic to the above sites and pages, or to parked or inaccessible pages, and

incorporate Toyota's distinctive, well-known and famous TOYOTA Marks, such as TOYOTA in its entirety, including, but not limited to: *GenuineOEMToyotaParts.com;* *OnlineToyotaParts.com;* *ToyotaPartsEStore.com;* *1stToyotaParts.com;* *Toyota.PartsWebsite.com;* *Toyota-Parts-Dealer.com;* *ToyotaPartsDealer.com;* *ToyotaParts4Cheap.com;* *ToyotaPartsWebsite.com;* *ToyotaPartsWholesale.net;* *ToyotaAndLexusParts.com;* *ToyotaPartsAnytime.com;* *PremierToyotaParts.com;* and *ToyotaParts-Store.com*.   Attached hereto as "**Exhibit 2**" are true and correct copies of online records reflecting the registration information for these domain names, including certain of which that identify Defendant Partsites or Scott Anderson as the registrant.

33.     The at-issue domains provide no other distinctive component or source indicator to serve as a point of differentiation with Toyota's name, marks and domain names.

34.     In addition to the unauthorized use of name and mark TOYOTA in each of the above-referenced domains, Defendants are also improperly using the TOYOTA Marks on at least one or more of these sites to conduct their automobile parts business.[1]   Representative examples of web pages from Defendants' sites are attached hereto as "**Exhibit 3**". On information and belief, the at-issue domains are confusingly similar to the TOYOTA Marks and are likely to and will inevitably confuse relevant consumers as to the source, association, authorization or sponsorship of Defendants' business, services, and websites with Toyota.

---

[1] On information and belief, although the domains at *Toyota-Parts-Dealer.com; ToyotaPartsDealer.com; ToyotaParts4Cheap.com; ToyotaPartsWebsite.com; ToyotaPartsWholesale.net; ToyotaAndLexusParts.com; ToyotaPartsAnytime.com; PremierToyotaParts.com; ToyotaParts-Store.com* do not resolve to an active website at the time of this Complaint, one or more of these sites previously made unauthorized use of the Toyota Marks.   The fact that certain domain names registered by Defendants, which incorporate the TOYOTA Marks, resolve to inactive sites is damaging to Toyota, and the goodwill and reputation built up by Toyota in the TOYOTA Marks. For example, on information and belief, should a consumer try to access such inactive sites where no products are available, they may never make any further effort to locate a legitimate online source for Toyota's parts and accessories which could result in lost sales to Plaintiffs.

35.    On information and belief, Defendants are also improperly using the TOYOTA Marks on the website at the URL *Partsites.com*, in connection with the offering of services relating to the development of e-commerce platforms for the sale of automotive parts.  For example, below is a true and correct copy of a screen shot of *Partsites.com*, in which the TOYOTA Marks are displayed.



36.    On information and belief, through these illegitimate domain names, Defendants own and control websites unlawfully using and displaying the TOYOTA Marks, including TOYOTA and the T Logo, without authorization or approval of Toyota. True and correct printouts of the web pages to which these domain names resolve are attached hereto as "**Exhibit 3".** Defendants' prominent and repeated use of marks virtually identical to or colorable imitations of the TOYOTA Marks on these websites and domain names is intended to cause and is likely to cause confusion among relevant consumers as to the source and sponsorship of the services offered by Defendants.  The use of similar fonts, stylizations and Toyota's corporate red

color in connection with their services further demonstrates Defendants bad faith and closely associates Defendants' services with Toyota and the TOYOTA Marks.

37.     Defendants have registered and/or using the above-referenced domains and/or are using the TOYOTA Marks in these domains and/or on the at-issue websites, without Toyota's authorization, permission or approval, to falsely convey that Defendants and/or Defendants' businesses are affiliated with, related to, sponsored or authorized by Toyota and/or to trade off the extensive goodwill built up by Toyota in the TOYOTA Marks, in an effort to benefit from Toyota's well-known reputation.

38.     Defendants' unauthorized use of the TOYOTA Marks in such domains and in connection with the marketing, advertising, promoting, offering for sale and selling of parts and accessories for Toyota vehicles and/or the offering of services relating to the development of e-commerce platforms for the sale of automotive parts, is likely to mislead and confuse potential and actual purchasers of Defendants' products and/or services into believing that the automotive parts and accessories, and related services, offered and sold by Defendants are authorized by, sponsored by, or in some other manner are associated or affiliated with Toyota.

39.     In addition, Defendants' wrongful use of the TOYOTA Marks or confusingly similar versions thereof, has actually diluted and/or is likely to cause dilution of the TOYOTA Marks, and has or is likely to tarnish and whittle away the distinctiveness of the famous TOYOTA Marks, including TOYOTA.

40.     Further, on at least one more of these websites, Defendants falsely claim and advertise throughout the United States that they are an authorized Toyota parts distributor, when they are not.  For example, below is a true and correct copy of a screen shot of website at the

URL *GenuineOEMToyotaParts.com*, which includes Defendants' claim that it is an "Authorized

TOYOTA Parts distributor":



41.     Defendants are not authorized distributors or dealers of Toyota's parts and

accessories.  Defendants' claims that they are authorized distributors are literally false, false by

necessary implication and/or misleading to consumers. Defendants' false and misleading

statements which have been made in interstate commerce either deceived or have the capacity to

deceive a substantial segment of potential consumers throughout the United States, including

Texas.

42.     On information and belief, Defendants' false and misleading statements that they

are authorized by Toyota, which relate to the legitimacy of their business, online retail services

and relationship with Toyota, have and are likely to influence consumers' purchasing decisions.

Defendants' online retail services are rendered in interstate commerce through interactive

websites and on information and belief, Defendants engage non-parties to ship products on their behalf through interstate commerce to consumers across the United States, including Texas.

43.     Upon information and belief, Toyota and its authorized dealers and licensees have been damaged and lost sales of parts and related accessories to prospective and current customers throughout the United States because of Defendants' false and/or misleading representations as noted herein.

44.     On information and belief, Defendants' false and/or misleading representations of fact are likely to, have and will inevitably harm and diminish Toyota's goodwill, business reputation, and the demand for Toyota's parts.

45.     On information and belief, Defendants registered the at-issue domains solely with the bad faith intent to profit from such domain names, redirect online traffic of consumers looking for TOYOTA parts to its business and away from Toyota's sites, and therefore have no legitimate interests or rights in the domain names.

46.     On information and belief, the online domain name registration records presently available are now incomplete and/or false, further demonstrating Defendants' bad faith.

47.     As a result of Defendants' unlawful registration of the at-issue domains, Toyota has no control over such domain names and Defendants are able to create a new website with content not authorized by Toyota and can link the domain name to any other site.

48.     On information and belief, Defendants' acts of registering and using the at-issue domains have been and are being committed with knowledge and willful intent to cause confusion, or to cause mistake or to deceive, and/or to profit therefrom.

49.      On information and belief, Defendants registered the at-issue domains and have intentionally and unlawfully used and continue to use the TOYOTA Marks on or in connection

with their websites and in their domains for the specific purpose of misleading consumers into believing falsely that their services are sponsored, approved, authorized by or affiliated with Toyota.

50.     Defendants' infringing conduct, unfair competitive practices, registration of the at-issue domain names and advertising statements are without the permission or authorization of Toyota.

51.     On information and belief, defendant Anderson has himself actively participated in the business activities of Partsites and its related website and domain names, and has authorized, directed, and/or participated in the infringement of the TOYOTA Marks, unfair competitive practices, cyberpiracy, false advertising and misappropriation of Toyota's marks for their financial gain and to the detriment of Toyota. Anderson has played an important role in the unlawful conduct set forth herein which is causing harm to Toyota, the TOYOTA Marks and the goodwill and reputation associated therewith, and is therefore individually liable along with Partsites.

## DEFENDANTS' WILLFULNESS

52.     On information and belief, because of Toyota's long, extensive and substantially exclusive use and/or sale of automobiles, automotive parts and accessories and related products and services under the TOYOTA Marks, and Toyota's significance as a manufacturer and supplier of automobiles, automotive parts and related accessories, Defendants were or should have been, at all times, fully aware of the TOYOTA Marks; they even claim on at least one of their infringing sites that in "2011, Toyota was ranked as the third largest car manufacturer in the world.  In fact, the Toyota Camry is the best selling car in America, 17 of the last 19 years." (*See* Exhibit 3).

53.     Notwithstanding Toyota's well known prior use and registration of and rights in and to the TOYOTA Marks, Defendants, without the consent of Toyota, adopted and caused to be used in interstate commerce, the TOYOTA Marks on or in connection with the sale of automotive parts, accessories, and services relating to the development of an online store for the sale of automotive parts, which are products or services identical, similar and/or related to Toyota's products and services in a manner not authorized by Toyota.

54.     In or about March 2016, Toyota learned that Defendants were making unauthorized use of Toyota's distinctive, well-known and famous TOYOTA Marks on a website and in a domain name in connection with the marketing, advertisement, promotion, offering for sale, and sale of TOYOTA parts and accessories, without permission or authorization from Toyota.

55.     By way of letters dated October 21, 2016, and January 6, 2017, Toyota demanded that Defendants cease and desist from all unauthorized and improper uses of the TOYOTA Marks on the site and in the URL at *ToyotaPartsEstore.com*. Thereafter, in 2018, Toyota was made aware that Defendants expanded their unlawful activities by making further unauthorized uses of the TOYOTA Marks on several more websites and domain names in addition to the one URL *ToyotaPartsEstore.com*, and in light of such expansive uses, in February 26, 2018, and June 29, 2018, outside counsel for Toyota again demanded that Defendants cease use of the mark TOYOTA in the at-issue URL; the use of the TOYOTA logo in red; and the phrase "Toyota genuine" to refer to and describe their products.  Copies of the cease and desist letter are attached hereto as "**Exhibit 4**". By these protests, Defendants had actual notice of Toyota's trademark rights and Toyota's objection to Defendants' use of copies or colorable imitations of the TOYOTA Marks.

56.     Despite Toyota's efforts, as well as actual and constructive notice, Defendants continue to make unauthorized use of the TOYOTA Marks on websites and domain names, including at *ToyotaPartsEstore.com*, to falsely convey the impression that Defendants' business is affiliated or sponsored by Toyota, and to benefit from Toyota's well-known reputation.

57.     Despite being on notice of Toyota's claims since at least as early as October 2016, Defendants have used and continue to use the TOYOTA Marks willfully and in bad faith with actual knowledge of Toyota's rights in the TOYOTA Marks.

## DEFENDANTS' ACTIVITIES ARE CAUSING DAMAGE TO TOYOTA AND THE CONSUMING PUBLIC

58.     Defendants' unauthorized use of the TOYOTA Marks and/or claims that they are an "authorized" distributor are likely to cause confusion, to cause mistake, or to deceive consumers and potential customers, as to the affiliation, connection, or association of Defendants with Toyota and/or TOYOTA Marks, or as to the origin, sponsorship, or approval of Defendants' services, when there is no legitimate connection with Toyota.

59.     Defendants' unauthorized use of the TOYOTA Marks and/or claims that they are an authorized distributor falsely designates the origin of Defendants' services, and falsely and misleadingly describes and represents facts with respect to Defendants and their products and/or services that is confusing to and likely to confuse consumers.

60.     Defendants' unauthorized use of the TOYOTA Marks is likely to cause dilution of the distinctive quality of Toyota's TOYOTA Marks.

61.     Defendants' unauthorized use of the TOYOTA Marks and/or claims that they are an authorized distributor enables them to trade on and receive the benefit of goodwill built up at great labor and expense over many years by Toyota, and to gain acceptance for their goods

and/or services not solely on their own merits, but on the reputation and goodwill of Toyota and the TOYOTA Marks.

62.     Defendants have been and continue to be unjustly enriched by obtaining a benefit from and taking undue advantage of Toyota, its marks and its goodwill.  Specifically, Defendants have unfairly competed against and taken undue advantage of Toyota by trading on and profiting from the goodwill in the TOYOTA Marks developed and owned by Toyota, resulting in Defendants wrongfully obtaining a monetary and reputational benefit for their own business and products and/or services.

63.     Defendants' unauthorized use of the TOYOTA Marks prohibits Toyota from the ability to control the nature and quality of products and services provided under its own TOYOTA Marks and places the valuable reputation and goodwill of Toyota in the hands of Defendants, over which Toyota has no control causing irreparable harm to Toyota.

64.     Unless restrained by this Court, these acts of Defendants will continue, and they have continued to cause irreparable injury to Toyota and to the public for which there is no adequate remedy at law.

### FIRST CAUSE OF ACTION
**(Federal Trademark Infringement**
**Under the Lanham Act § 32, 15 U.S.C. §1114(1)(a))**

65.     Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 64 of the Complaint as set forth above.

66.     Toyota owns prior and superior trademark rights in its federally registered TOYOTA Marks.

67.     Defendants' wrongful adoption and unauthorized use in interstate commerce of the federally registered TOYOTA Marks, or designations or names confusingly similar to the

registered TOYOTA Marks, in domain names and on websites used in connection with the online services for the marketing, advertising, promotion and sale of replacement parts and accessories for Toyota vehicles, and related services, is calculated and is likely to cause confusion, to cause mistake or to deceive consumers and the relevant public as to sponsorship, authorization, affiliation or permission because a significant number of consumers are likely to mistakenly believe that Defendants' services are marketed, sold, rendered or authorized by or connected, affiliated or related to Toyota, when they are not.

68.     Defendants' use of the registered TOYOTA Marks, or copies or colorable imitations of the TOYOTA Marks, on their websites, in domain names, and in marketing, advertising, promotions and solicitations of their services, capitalizes on the goodwill and reputation of the TOYOTA Marks.

69.     Such use by Defendants of the registered TOYOTA Marks, or copies or colorable imitations of the TOYOTA Marks, as alleged herein and affecting interstate commerce constitutes trademark infringement in violation of Section 32(a) of the Lanham Act, 15 U.S.C. § 1114.

70.     As a proximate result of the unlawful acts of Defendants as alleged herein, Toyota has suffered and without judicial intervention, will continue to suffer great damage to its business, marks, goodwill, reputation, and profits, while Defendants' profit at Toyota's expense.

71.     By committing the acts alleged herein, Defendants have intentionally, knowingly and/or willfully infringed the registered TOYOTA Marks.

72.     Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongdoing, with the intent to unfairly commercially benefit at Toyota's expense.

73.    Toyota has no adequate remedy at law for the infringement of its registered trademarks as alleged herein.  Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

## SECOND CAUSE OF ACTION
### (Federal Unfair Competition and False Designation of Origin Under the Lanham Act §43(a), 15 U.S.C. §1125(a))

74.    Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 73 of the Complaint as set forth above.

75.    The TOYOTA Marks are famous trademarks as used in connection with the manufacture, marketing, advertising, promotion, distribution, sale and service of motor vehicles, parts and accessories, and provision of information online and in the marketplace relating to such vehicles and parts.  These marks are inherently distinctive and have become exclusively associated with and identify Toyota's business, products, and services.

76.    By reason of Defendants' wrongful use of the TOYOTA Marks, or copies or colorable imitations thereof, in connection with their business and by indicating that they are "authorized" Toyota parts distributors, as well as Defendants' wrongful registration and use of several domain names and websites which make use of the TOYOTA Marks or designations or names confusingly similar thereto, consumers of Defendants' services and/or are deceptively led to believe that Defendants' websites, domain names and/or goods and/or services originate from, or are sponsored or otherwise approved by, Toyota, when in fact Defendants have no connection whatsoever with Toyota in regard to such products and/or services.

77.    Defendants' unauthorized, misleading and willful use of the TOYOTA Marks, or copies or colorable imitations thereof, and the unlawful actions described herein constitute unfair competition/passing off, false designation of origin, false or misleading descriptions or

representations of fact, trademark infringement and false advertising, which is likely to cause confusion, or to cause mistake or to deceive consumers as to an affiliation, connection or association between Toyota and Defendants or as to the origin, sponsorship or approval of Defendants' websites, domain names and/or services or products, in and affecting interstate commerce all in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

78.     As a proximate result of the acts of Defendants as alleged herein, Toyota has suffered and without court intervention will continue to suffer great damage to its business, marks goodwill, reputation, and profits, while Defendants' profit at Toyota's expense.

79.     Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongdoing, with the intent to unfairly commercially benefit at Toyota's expense.

80.     Toyota has no adequate remedy at law for Defendants' acts constituting unfair competition.  Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

### THIRD CAUSE OF ACTION
### (Federal Cybersquatting - 15 U.S.C. § 1125(d))

81.     Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 80 of the Complaint as set forth above.

82.     The TOYOTA Marks, as used in connection with connection with the manufacture, marketing, advertising, promotion, distribution, sale and service of motor vehicles, parts and accessories, and the provision of information online and in the marketplace relating to such vehicles and parts and other related services, are inherently distinctive and famous marks owned by Toyota and have become associated with Toyota, and thus, exclusively identify Toyota's business, products and services.

83.     On information and belief, after Toyota's first use and registration of the TOYOTA Marks, Defendants themselves or through an agent or alter-ego have a bad faith intent to profit from the TOYOTA Marks and have, in bad faith, registered, acquired, used, and/or maintained registration of the following infringing Internet domain names - *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; ToyotaPartsEStore.com; 1stToyotaParts.com; Toyota.PartsWebsite.com; Toyota-Parts-Dealer.com; ToyotaPartsDealer.com; ToyotaParts4Cheap.com; ToyotaPartsWebsite.com; ToyotaPartsWholesale.net; ToyotaAndLexusParts.com; ToyotaPartsAnytime.com; PremierToyotaParts.com and ToyotaParts-Store.com* – which were and are known by Defendants to be identical, confusingly similar to or dilutive of the TOYOTA Marks, which are and were distinctive and famous at the time of Defendants' registration thereof. As a result, consumers are erroneously led to believe that Defendants' domain names and websites originated with or are sponsored or otherwise approved by Toyota, in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

84.     Defendants' aforementioned acts complained of here were committed with the bad faith intent to profit from or trade off the goodwill, fame, reputation and brand recognition inherent in the TOYOTA Marks. Such acts redirect traffic away from Toyota's websites and businesses and to Defendants' illegitimate websites, online services and business, all for their own ill-gotten financial gain and to the detriment of Toyota.

85.     Defendants' actions complained of herein constitute cyberpiracy in and affecting interstate commerce in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

86.     As a proximate result of Defendants' actions, Toyota has suffered and without judicial intervention will continue to suffer great damage to its business, goodwill, reputation, and profits.

87.     Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongdoing, with the intent to unfairly commercially benefit at Toyota's expense.

88.     Toyota has no adequate remedy at law for Defendants' cyberpiracy. Unless Defendants are permanently enjoined by the Court and the at-issue domain names transferred to Toyota, Toyota will continue to suffer irreparable harm.

### FOURTH CAUSE OF ACTION
### (False Advertising Under the Lanham Act - 15 U.S.C. § 1125(a)(1)(B))

89.     Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 88 of the Complaint as set forth above.

90.     On information and belief, Defendants have made false and/or misleading statements of fact in interstate commerce in that they claim to be an "Authorized Toyota Parts distributor" or an authorized or affiliated TOYOTA parts online retailer or dealer or distributor on their websites.

91.     On information and belief, Defendants' false and/or misleading statements of fact have actually deceived or tended to deceive a substantial segment of the relevant consumers for Toyota parts and accessories.

92.     On information and belief, Defendants' false and/or misleading statements of fact are material and have influenced or are likely to influence the purchasing decisions of consumers to buy through Defendants' online businesses and interactive web sites replacement parts and accessories for Toyota vehicles, and related services throughout the United States.

93.     Defendants' aforementioned activities constitute unfair competition, false and/or misleading descriptions or representations of fact, or false advertising, which are likely to cause confusion or mistake, or to deceive the relevant consumers or the relevant public in and affecting interstate commerce, all in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. 1125(a)(1)(B).

94.     Defendants' acts were and are intentionally designed to entice the relevant customer to purchase its products or services at Toyota's expense.

95.     On information and belief, the relevant consumers are likely to be confused, deceived and misled by Defendants' false and/or misleading statements and representations, and have purchased or are likely to purchase products and services from Defendants instead of directly from Toyota or its authorized dealers as a result thereof.

96.     Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongful conduct, with the intent to unfairly commercially benefit at Toyota's expense. Defendants have profited from their unlawful actions and have been unjustly enriched to the detriment of Toyota.

97.     As a direct and proximate result of the acts of Defendants alleged herein, Toyota has suffered and without judicial intervention will continue to suffer great damage to its business, goodwill, reputation, and profits, while Defendants are profiting at Toyota's expense.

98.     Toyota has no adequate remedy at law for this unfair competition and false advertising. Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

## FIFTH CAUSE OF ACTION
### (Federal Dilution Under the
### Lanham Act §43(c),15 U.S.C. §1125(c))

99.     Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 98 of the Complaint as set forth above.

100.    The TOYOTA Marks are arbitrary, fanciful and highly distinctive in connection with automobiles, automotive parts and accessories and related services, and are strong and, indeed, famous as a result of Toyota's prominence in the marketplace and extensive advertising, promotion and sale of goods and services under such marks. Indeed, Toyota has a reputation for exceptional care, expertise and skill in performing, marketing and advertising its automobiles and related services and products.

101.    Defendants' wrongful adoption and use of the TOYOTA Marks commenced long after the TOYOTA Marks acquired distinctiveness, became famous, and exclusively associated with Toyota.

102.    Defendants' use of the TOYOTA Marks or variants thereof on or in connection with its websites, domain names, and sale of goods and/or services dilutes, blurs, and diminishes the distinctive quality and value of the TOYOTA Marks, and diminishes and actually lessens the advertising value and selling power, and the identity and reputation that the TOYOTA Marks might otherwise convey, in violation of 15 U.S.C. § 1125(c).

103.    Defendants' aforementioned acts constitute dilution in violation of Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

104.    As a proximate result of Defendants' actions, Toyota has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits.

105.    Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongdoing, with the intent to unfairly commercially benefit at Toyota's expense.

106.    Toyota has no adequate remedy at law for Defendants' acts of dilution. Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

### SIXTH CAUSE OF ACTION
### (Trademark Infringement Under Texas State Common Law)

107.    Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 106 of the Complaint as set forth above.

108.    The TOYOTA Marks are inherently distinctive and/or have acquired strong secondary meaning.  Toyota has used its name and the TOYOTA Marks and variants thereof for automotive parts and automobiles and related products and services for many years.  Such marks have become extensively known and associated in the minds of the public exclusively with Toyota's business, products and services.

109.    Toyota owns valid common law trademark rights in and to its name and the TOYOTA Marks, including, TOYOTA, the T Logo, and variants thereof.

110.    Defendants' unlawful deceptive and infringing practices, and other conduct as described above, constitute unfair competition and trademark infringement of Toyota's rights in its trademarks in violation of Texas common law.

111.    By these actions, Defendants have appropriated the TOYOTA Marks at no cost to themselves, and such unfair competition, infringement and misappropriation have irreparably injured the recognition and goodwill associated with the TOYOTA Marks. Such injury, for which there is no adequate remedy at law, will continue unless Defendants are permanently

enjoined by the Court, Defendants' discontinue using the TOYOTA Marks, and the subject domain name registrations are transferred to Toyota.

112.    As a proximate result of the willful acts of Defendants as alleged herein, Toyota has suffered and will continue to suffer great damage to its business, goodwill, reputation, and profits, while Defendants' profit at Toyota's expense.

113.    Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongdoing, with the intent to unfairly commercially benefit at Toyota's expense.

114.    Toyota has no adequate remedy at law against this infringement.   Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition Under Texas Law)

115.    Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 114 of the Complaint as set forth above.

116.    The TOYOTA Marks are arbitrary, fanciful and highly distinctive in connection with automobiles, automotive parts and accessories and related services, and are strong and, indeed, famous as a result of Toyota's prominence in the marketplace and extensive advertising, promotion and sale of goods and services under such marks. Indeed, Toyota has a reputation for exceptional care, expertise and skill in performing, marketing, advertising, promoting and providing information relating to its automobiles and related services and products. The TOYOTA Marks have become extensively known and associated in the minds of the public exclusively with Toyota's business, products and services, and have acquired strong secondary meaning.

117.    Toyota owns valid common law trademark rights in and to the TOYOTA Marks.

118.    Defendants' wrongful acquisition, maintenance of registrations and use of the Internet domain names *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; ToyotaPartsEStore.com; 1stToyotaParts.com; Toyota.PartsWebsite.com; Toyota-Parts-Dealer.com; ToyotaPartsDealer.com; ToyotaParts4Cheap.com; ToyotaPartsWebsite.com; ToyotaPartsWholesale.net; ToyotaAndLexusParts.com; ToyotaPartsAnytime.com; PremierToyotaParts.com* and *ToyotaParts-Store.com.*, which appropriate the TOYOTA Marks, constitutes a false designation of origin, false or misleading description of fact, and false or misleading representation of fact, which are likely to cause consumer confusion, deception or mistake.

119.    Defendants' use of the TOYOTA Marks on its websites and in domain names constitutes unfair competition in violation of Texas common law.

120.    As a proximate result of Defendants' actions, Toyota has suffered and without judicial intervention will continue to suffer great damage to its business, goodwill, reputation, and profits.

121.    Toyota has no adequate remedy at law for Defendants' unfair competition. Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

122.    Defendants acted willfully and deliberately after being placed on notice by Toyota of their wrongdoing, with the intent to unfairly commercially benefit at Toyota's expense.

123.    Defendants' actions were committed intentionally, willfully and wantonly. Toyota is therefore entitled to an award of punitive damages as an example and by way of punishing Defendants.

## EIGHTH CAUSE OF ACTION
### (State Dilution Under Texas Anti-Dilution Statute – Tex. Bus. & Com. Code Ann. §16:103)

124.    Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 123 of the Complaint as set forth above.

125.    The TOYOTA Marks are inherently distinctive and/or have acquired strong secondary meaning. Toyota has used the TOYOTA Marks and variants thereof for automotive parts and automobiles and related products and services for many years. Such marks have become extensively known and associated in the minds of the public exclusively with Toyota's business, products and services.

126.    Toyota owns valid common law trademark rights in and to its name and the Toyota Marks, including, TOYOTA, the T Logo, and variants thereof. The TOYOTA Marks are famous and distinctive marks.  Defendants' use of the TOYOTA Marks, or copies or colorable imitations thereof, for their Internet domain names and websites are likely to injure Toyota's business reputation and to dilute the distinctive quality of the TOYOTA Marks.

127.    As a proximate result of Defendants' actions, Toyota has suffered and without judicial intervention will continue to suffer damage to its business, goodwill, reputation, and profits.

128.    Toyota has no adequate remedy at law for Defendants' infringements of the TOYOTA Marks. Unless Defendants are permanently enjoined by the Court, Toyota will continue to suffer irreparable harm.

## PRELIMINARY INJUNCTION

129.    Toyota realleges and incorporates herein by reference the allegations of paragraphs 1 through 128 of the Complaint as set forth above.

130.     Toyota asks the Court to enter a preliminary injunction to prevent further irreparable injury to Toyota pending final resolution of this lawsuit, at which time a permanent injunction will be warranted by the facts stated above. Toyota asks the Court to enjoin Defendants from using the TOYOTA Marks and any other mark that is confusingly similar to the TOYOTA Marks in connection with the promotion, advertising, manufacture, distribution, offering for sale, or sale of automotive parts and accessories, and/or services relating to the development of e-commerce platforms for the sale of automotive parts.

131.     Toyota has alleged causes of action for trademark infringement, unfair competition, false designation of origin, cybersquatting, false advertising and dilution against Defendants, and as indicated in this Complaint, Toyota has a probable right of recovery and likelihood of succeeding on the merits.  Toyota will suffer imminent, irreparable harm without Court intervention and for which there is no adequate remedy at law.

132.     As a direct and proximate result of Defendants' wrongful actions in this Complaint, Toyota will suffer imminent injury that will be irreparable and for which no remedy at law exists without the protections of injunctive relief. Toyota is willing to post the necessary and reasonable bond to facilitate the injunctive relief requested.

133.     Wrongful, damaging conduct has occurred and will continue to occur if not enjoined.  On information and belief, Defendants are intent on exploiting the TOYOTA Marks in violation of governing law and must be restrained from doing so.

134.     The threatened injury to Toyota outweighs any possible damage to Defendants.

135.     The public interest is served by an injunction as it protects against the confusion and deception of consumers, as described above, and it protects the substantial investment made by Toyota in creating and preserving its TOYOTA Marks.

**REQUESTED RELIEF AND REQUEST FOR PERMANENT INJUNCTION**

WHEREFORE, Toyota prays for entry of judgment and for relief against Defendants as follows, that:

A.      Defendants, their respective officers, agents, servants, employees and representatives and all other persons, firms, corporations or businesses in active concert or participation with them, whether in the United States or abroad, be permanently enjoined and restrained from (a) using the TOYOTA Marks, including TOYOTA, the T Logo, or any other name or mark owned by Toyota, or any variant thereof, or any copies or colorable imitations thereof, in a manner which is likely to confuse the public as to the source or sponsorship of Defendants' business, websites, products or services or otherwise likely to cause dilution of the TOYOTA Marks; (b) making false and/or misleading statements in its advertisements, marketing material, and/or websites that they are an authorized distributor or dealer of Toyota parts and accessories and/or that they are somehow affiliated with, related to, sponsored or authorized by Toyota; (c) using, registering or maintaining  a domain name, trade name or trademark containing one or more of the TOYOTA Marks, the name or mark TOYOTA or any variants thereof or any confusingly similar trade name or mark;  (d) using, in any manner, including, but not limited to, in connection with an Internet website, the domains *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; 1stToyotaParts.com; Toyota.PartsWebsite.com; Toyota-Parts-Dealer.com; ToyotaPartsDealer.com; ToyotaParts4Cheap.com; ToyotaPartsWebsite.com; ToyotaPartsWholesale.net; ToyotaAndLexusParts.com; ToyotaPartsAnytime.com; PremierToyotaParts.com; ToyotaParts-Store.com; and ToyotaPartsEstore.com*, or any other domain name or mark confusingly similar to or dilutive of the TOYOTA Marks, the name and mark TOYOTA or variants thereof, or

advertising or promoting such confusingly similar domain name or mark; (e) selling, transferring, assigning, contracting to sell, contracting to transfer or contracting to assign, or otherwise attempting to sell, transfer, or assign the registration for the Internet domain names owned by Defendants that contain TOYOTA as alleged herein or any name or mark confusingly similar to the name and mark TOYOTA and variants thereof, except for transferring any such domain names to TOYOTA and except as otherwise ordered by the Court; (f) filing or participating in or instructing the filing of any application to register a domain name containing the confusingly similar name or mark TOYOTA or any designation confusingly similar thereto or constituting a dilution thereof; (g) using Toyota's trademarks or variants thereof, including the TOYOTA Marks, in any manner that unfairly trades off Toyota's names, marks or goodwill; and (h) doing any act or thing calculated or likely to cause confusion or mistake in the minds of members of the public or the trade, or prospective purchasers of Defendants' services, as to the source of their services, or likely to deceive members of the public or the trade, or prospective purchasers, into believing that there is some connection between Defendants and Plaintiffs or that Defendants' services/products are being advertised, promoted, sold or offered for sale by Plaintiffs or with Plaintiffs' authorization.

B.    Ownership of the registrar certificates for the domain names *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; GenuineOEMToyotaParts.com; 1stToyotaParts.com; Toyota.PartsWebsite.com; Toyota-Parts-Dealer.com; ToyotaPartsDealer.com; ToyotaParts4Cheap.com; ToyotaPartsWebsite.com; ToyotaPartsWholesale.net; ToyotaAndLexusParts.com; ToyotaPartsAnytime.com; PremierToyotaParts.com; ToyotaParts-Store.com; and ToyotaPartsEstore.com,* and any other

domain names which include the name and mark TOYOTA or variants thereof owned by Defendants be transferred to Toyota;

C.      The domain name registrars be ordered to complete the transfer to Toyota of the registration for the domain names *GenuineOEMToyotaParts.com; OnlineToyotaParts.com; 1stToyotaParts.com; Toyota.PartsWebsite.com; Toyota-Parts-Dealer.com; ToyotaPartsDealer.com; ToyotaParts4Cheap.com; ToyotaPartsWebsite.com; ToyotaPartsWholesale.net; ToyotaAndLexusParts.com; ToyotaPartsAnytime.com; PremierToyotaParts.com; ToyotaParts-Store.com; and ToyotaPartsEstore.com,* and any other domain names, which include the name and mark TOYOTA and variants thereof owned by Defendants;

D.      Defendants be ordered to disclose to the Court and Toyota all other domain name registrations owned or controlled by Defendants through any domain name registrar or registry that includes names or marks owned by Toyota in order to permit the Court and Toyota to consider whether any such other registrations should be transferred to Toyota or be subject to other relief in this matter;

E.      Defendants, pursuant to 15 U.S.C. § 1116(a), be directed to file with this Court and serve upon Toyota's counsel within thirty (30) days after entry of the injunction, a report in writing under oath, setting forth in detail the manner and form in which they have complied with the injunction;

F.      Defendants account for and pay over to Toyota all profits realized by Defendants, or others acting in concert or participation with Defendants, from their services and the offering for sale of goods and/or services under or in connection with the use of the TOYOTA Marks, including, but not limited to, the name and mark TOYOTA, and the T Logo, or any variant

thereof, or name or mark confusingly similar thereto, and from advertising, promoting, offering for sale and/or selling products and/or services resulting from Defendants' infringement, dilution cybersquatting, false advertising, and/or unfair methods of competition as alleged herein;

G.     Toyota recover its damages sustained as a result of Defendants' unfair competition, false advertising, cyberpiracy, dilution and infringement of the TOYOTA Marks;

H.     Toyota be awarded three times Defendants' profits or three times Toyota's damages, whichever is greater, together with its reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1117(a) and (b) and TEX. BUS. & COM. CODE ANN. § 16.104(c).

I.     Toyota recover statutory damages under the Lanham Act, including, but not limited to, statutory damages of $100,000.00 per domain name for cybersquatting pursuant to 15 U.S.C. § 1117(d);

J.     Toyota be awarded punitive and exemplary damages and attorneys' fees under Texas state law for Defendants' willful and intentional acts;

K.     Toyota recover its costs of this action, and pre- and post-judgment interest; and; and

L.     Toyota recover such further relief to which it may be entitled.

## **JURY DEMAND**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Toyota demands a trial by jury on all issues triable of right by a jury.

Respectfully submitted,

*/s/Clyde M. Siebman*
Clyde M. Siebman, LEAD COUNSEL
State Bar No. 18341600
clydesiebman@siebman.com
Elizabeth S. Forrest
State Bar No. 24086207
elizabethforrest@siebman.com
SIEBMAN FORREST BURG
& SMITH, LLP
Federal Courthouse Square
300 N. Travis St.
Sherman, TX 75090
Telephone:  903.870.0070
Facsimile:  903.870.0066

Paul J. Reilly, *pro hac* pending
State Bar No. 24091605
paul.reilly@bakerbotts.com
Elizabeth K. Rucki
State Bar No. 24060651
elizabeth.rucki@bakerbotts.com
Tyler M. Beas, *pro hac* pending
State Bar No. 24078214
tyler.beas@bakerbotts.com
BAKER BOTTS L.L.P.
2001 Ross Avenue, Suite 900
Dallas, Texas 75201
Telephone:  214.953.6500
Facsimile:  214.661.4899

**ATTORNEYS FOR PLAINTIFFS
TOYOTA JIDOSHA KABUSHIKI
KAISHA, also doing business as
TOYOTA MOTOR CORPORATION
and TOYOTA MOTOR SALES, U.S.A.,
INC.**