UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| TOYOTA JIDOSHA KABUSHIKI KAISHA, also doing business as TOYOTA MOTOR CORPORATION, and TOYOTA MOTOR SALES, U.S.A., INC., | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Case No.: 4:18-cv-00908 |
| PARTSITES, LLC and SCOTT ANDERSON., | § § § | JURY DEMAND |
| Defendants. | § § | |

## **DEFENDANTS' MOTION TO DISMISS**

Defendants, Partsites, LLC ("Partsites") and Scott Anderson ("Anderson"), through counsel and pursuant to Fed. R. Civ. P. 12(b)(2), Fed. R. Civ. P. 12(b)(3), 12(b)(6), and 12(e), and 28 U.S.C. §§ 1404(a) and 1406, hereby moves the Court to dismiss the Complaint (Compl. ECF No. 1) filed in this civil action by Plaintiffs Toyota Jidosha Kabushiki Kaisha d/b/a Toyota Motor Corporation and Toyota Motor Sales, U.S.A., Inc. (collectively, "Toyota") for lack of personal jurisdiction, improper venue, and failure to state a claim upon which relief can be granted, or, alternatively, to require a more definite statement, and to transfer this matter to the Southern District of Florida.  In support of this Motion, Partsites and Anderson state:

## I.   **INTRODUCTION**

This civil action is a case of a major multi-national corporation abusing its intellectual property portfolio in an improper attempt to stifle competition in the marketplace.  Partsites, is a Miami-based startup company providing e-commerce platforms and solutions for the automotive industry.  Partsites itself does not sell any automotive parts or products, rather, authorized dealers

and distributors contract with Partsites to use Partsites' products.  Partsites participated in a request for proposal issued by Toyota to provide an e-commerce solution to Toyota, a contract Partsites did not win.  Toyota, now unhappy that the vendor it selected to provide an e-commerce solution is underperforming Partsites' superior products, is now embarking on litigation in an attempt to drive Partsites out of business and remove a superior platform from the marketplace.

Because the Complaint is designed to harass, and abuse Toyota's market position and intellectual property portfolio, it suffers from a myriad of defects that require dismissal and transfer to the United States District Court for the Southern District of Florida.  The Complaint confusingly lumps both plaintiffs together,[1] improperly incorporates different causes of action into each other, ignores basic black-letter law, and attempts to manufacture personal jurisdiction and venue in this District when the exhibits to the Complaint clearly show that venue lies elsewhere.  For these reasons the Complaint should be dismissed and this matter transferred to the United States District Court for the Southern District of Florida.

## II.   <u>STATEMENT OF THE ISSUES TO BE DECIDED BY THE COURT</u>

Pursuant to E.D. Tex. L.R. CV-7, this case dispositive motion requires the Court to decide the following issues:

1.   Whether the Complaint should be dismissed for lack of personal jurisdiction;

2.   Whether the Complaint should be dismissed for improper venue;

3.   Whether this action should be transferred to the United States District Court for the Southern District of Florida as venue properly lies in that district;

---

[1] For example, Toyota Motor Sales, U.S.A., Inc. appears in only three places in the body of the Complaint: (1) the style, (2) the introductory paragraph, and (3) paragraph 3.  After paragraph 3 of the Complaint, Toyota Motor Sales, U.S.A., Inc. is improperly lumped together with the other plaintiff.  This results in a variety of fatal pleading defects, such as Toyota Motor Sales, U.S.A., Inc. is bringing a cause of action for federal trademark infringement (Count I of the Complaint) even though the exhibits to the Complaint (specifically, Exhibit 1) shows that Toyota Motor Sales, U.S.A., Inc. does not own any of the trademarks-in-suit and therefore lacks standing.

4.   Whether the Complaint should be dismissed as an improper shotgun pleading;

5.   Whether the Complaint should be dismissed for failure to state a cause of action due to the fair use doctrine;

6.   Whether the Complaint should be dismissed for failure to state a cause of action due to the first sale doctrine; and

7.   Whether Plaintiffs should be compelled to provide a more definite statement.

## III.   LEGAL STANDARDS

Varying legal standards apply to this Motion.

### A.   Legal Standard for Motion to Dismiss for Improper Venue Pursuant to Fed. R. Civ. P. 12(b)(3).

"Federal Rule of Civil Procedure 12(b)(3) allows a party the ability to move the Court to dismiss an action for "improper venue." Once a defendant raises improper venue by motion, 'the burden of sustaining venue will be on Plaintiff.'" *Diclementi v. USAA Fed. Sav. Bank*, No. 4:17-CV-485, 2017 WL 6388700, at *1 (E.D. Tex. Dec. 14, 2017) (*citing Cincinnati Ins. Co. v. RBP Chemical Tech., Inc.*, No. 1:07CV699, 2008 WL 686156, at *5 (E.D. Tex. Mar. 6, 2008)). "A district court has discretion to either dismiss a plaintiff's claims or transfer the case, *sua sponte,* under 28 U.S.C. § 1406(a)." *Hamilton v. United Parcel Serv., Inc.*, No. 1:11-CV-240, 2012 WL 760714, at *6 (E.D. Tex. Feb. 13, 2012); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").

### B.   Legal Standard for Motion to Dismiss for Failure to State a Cause of Action Upon Which Relief Can Be Granted Pursuant to Fed. R. Civ. P. 12(b)(6).

Fed. R. Civ. P. 12(b)(6) permits dismissal if a plaintiff fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 8(a)(2)

states a pleading must contain "a short and plain statement of the
claim showing that the pleader is entitled to relief."

*Tubby v. Allen*, No. 6:16CV972, 2016 WL 8919769, at *1 (E.D. Tex. Dec. 1, 2016), *report and*

*recommendation adopted*, No. 6:16CV972, 2017 WL 1881152 (E.D. Tex. May 8, 2017) (*citing*

*Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009)).

### C.    Legal Standard for Transferring Venue.

"For the convenience of parties and witnesses, in the interest of justice, a district court may

transfer any civil action to any other district or division where it might have been brought." 28

U.S.C. § 1404(a); *Optimum Power Solutions, LLC v. Apple, Inc.*, 794 F. Supp. 2d 696 (E.D. Tex.

2011). "[T]he underlying premise of §1404(a) is that courts should prevent plaintiffs from abusing

their privilege [of choosing venue] under §1391 by subjecting defendants to venues that are

inconvenient under the terms of §1404(a)." *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 312-13

(5th Cir. 2008).

## IV.    ANALYSIS

### A.    The Complaint Should be Dismissed for Lack of Personal Jurisdiction Pursuant to Fed. R. Civ. P. 12(b)(2).

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss
a claim if the court does not have personal jurisdiction over the
defendant. Fed. R. Civ. P. 12(b)(2). After a nonresident defendant
files a motion to dismiss for lack of personal jurisdiction, the party
seeking to invoke the court's jurisdiction must "present sufficient
facts as to make out only a prima facie case supporting jurisdiction."

*Nana Jones, LLC v. Microbiotic Health Foods, Inc.*, No. 4:17CV00784, 2018 U.S. Dist. LEXIS

24590 at *3 (E.D. Tx. Feb. 15, 2018)(Mazzant, J.) (*quoting Alpine View Co. v. Atlas Copco AB*,

205 F.3d 208, 215 (5th Cir. 2000)). "A federal court may exercise personal jurisdiction over a

nonresident defendant if (1) the forum state's long-arm statute confers personal jurisdiction over

that defendant, and (2) the exercise of personal jurisdiction comports with the due process clause

of the Fourteenth Amendment." *Id.* at * 4 (*citing Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016)).

There are two types of personal jurisdiction: general and specific.  "General jurisdiction occurs when 'a State exercises personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum.'"  *Id.* at *7 (*quoting Helicopteros Nacionales de Colom, S.A. v. Hall*, 466 U.S. 408, 414, n.9 (1984)).  Meanwhile, "Specific jurisdiction exists when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Id.* at *9 (*quoting Helicopteros Nacionales*, 466 U.S. at 414, n. 8).  "A single act by a defendant may establish specific jurisdiction if the act in the forum state is substantially related to the suit."  *Id. (citing Moncrief Oil Int'l v. OAO Gazprom*, 481 F.3d 309, 311 (5th Cir. 2007)).

Because neither general nor specific jurisdiction exists, the Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(2).

> 1.     *There is no General Jurisdiction Over Defendants in the Eastern District of Texas*.

> General jurisdiction exists only when the defendant's contacts with the State constitute "continuous and systematic" general contacts with the forum…  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly regarded as at home."

*Nana Jones, LLC*, 2018 U.S. Dist. LEXIS 24590 at *8 (*quoting Diamler AG v. Bauman*, 517 U.S. 117 (2014)).  Here, the Complaint admits that Partsites is a Florida entity (Compl. ¶ 4, ECF No. 1)[2] and that Anderson is a resident of Florida (Compl. ¶ 5, ECF No. 1).[3]

---

[2] "Partsites, LLC…is a Florida limited liability company, with a principal business address of 175 SW 7th Street, Unit 1704, Miami, Florida…"

[3] "Anderson…is an individual residing at 175 SW 7th Street, Unit 1704, Miami, Florida…"

Operating a website is not sufficient to convey general jurisdiction over either defendant. "However, even if a website did lend itself to general jurisdiction, in this case it would not. The Court is tasked with determining where Defendant is 'at home' by looking to Defendant's contacts worldwide." *Id.* Moreover,

> [a] corporation is deemed at home in its place of incorporation and its principle place of business….Defendant is a California corporation with its principle place of business in California. Defendant's website activity does not render Defendant "at home" in Texas. Accordingly, Plaintiff has not met its burden to establish a prima facie case of general jurisdiction.

*Id*. Therefore, there is no general jurisdiction over the Defendants in the Eastern District of Texas.

> 2.   *There is no Specific Jurisdiction over Defendants in the Eastern District of Texas*.

Nor is there any specific jurisdiction over the Defendants in the Eastern District of Texas. "Specific jurisdiction exists when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Id.* at *9 (*quoting Helicopteros Nacionales*, 466 U.S. at 414, n. 8).

> The Fifth Circuit follows a three-step analysis in determining whether a court has specific personal jurisdiction: "(1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable."

*Id*. at *9-10 (*quoting McFadin v. Gerber*, 587 F.3d 753, 759 (5th Cir. 2009)).

### a.   **Defendants do Not Have Minimum Contacts with the State of Texas.**

First, Defendants do not have minimum contacts with the State of Texas.  Annexed hereto as Exhibits 1 and 2 are the Declarations of David Lemoie (President of Partsites) (Ex. 1) and Scott Anderson (Ex. 2), respectively (collectively, the "Declarations").  The Declarations make clear

that neither defendant has the necessary minimum contacts with the State of Texas.  More specifically:

- the Lemoie Declaration (Ex. 1, ¶¶ 3-6) makes clear that Partsites does not sell or offer for sale any automotive parts anywhere, rather, Partsites is a provider of technology solutions either sold or licensed to authorized automotive dealers, including authorized Toyota dealers, who sell their products (which are authorized, authentic Toyota parts) to others;

- per the Lemoie Declaration (Ex. 1, ¶¶ 7-9), the Websites are not licensed to any Texas person or entity; and

- the Anderson Declaration (Ex. 2 , ¶¶ 3-5) makes clear that Anderson has only visited the State of Texas once, doing so in 2012, and has had no other substantive contact with the State of Texas since then.

Defendants lack the minimum contacts necessary for specific personal jurisdiction over them to exist in the Eastern District of Texas.

### b.    The Complaint Does Not Arise Out of or Result From Defendant's Forum Related Contacts.

Because there are no minimum contacts between Defendants and the State of Texas, the Complaint cannot arise out of or result from those non-existent contacts.  The Complaint generally alleges that Defendants operate websites and sell automotive parts.  However, as shown in the Declarations, and demonstrated throughout this Motion (through reference to Plaintiff's own allegations of the Complaint), Defendants do not sell any automotive parts, and the Websites are operated out of Miami, Florida.  For all of these reasons, the conduct alleged in the Complaint does not arise out of contacts with the State of Texas.

### c.    The Exercise of Personal Jurisdiction Over the Defendants is Not Fair and Reasonable Under the Circumstances.

Because Plaintiffs cannot meet their burden of satisfying the first two elements of the test

for specific jurisdiction, the third element is moot, the exercise of personal jurisdiction over the

Defendants is not fair and reasonable, and the Complaint should be dismissed pursuant to Fed. R.

Civ. P. 12(b)(2).

**B.      The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(3) as
         Venue in the Eastern District of Texas is Improper.**

Plaintiffs attempt to force venue for this civil action into the Eastern District of Texas by

misquoting the federal venue statute and making a single, bare, conclusory statement regarding

venue which is subsequently, repeatedly shown to be inaccurate by the Complaint itself.   The

Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3) for improper venue.

The federal venue statute, 28 U.S.C. § 1391(b) contains two provisions for venue that are

relevant in the instant civil action.[4]

> Venue in General.—A civil action may be brought in—
>
> (1) a judicial district in which any defendant resides, if all
> defendants are residents of the State in which the district is located;
> [or]
>
> (2) a judicial district in which a substantial part of the events or
> omissions giving rise to the claim occurred, or a substantial part of
> property that is the subject of the action is situated…

Additionally, the Lanham Act states that venue is proper in "a judicial district where any defendant

resides." *Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, No. 3:09-CV-950-D, 2009 U.S. Dist.

LEXIS 106135, at *24 (N.D. Tex. November 12, 2009).   Plaintiffs make a single, bare, conclusory

statement regarding venue in the Complaint:

---

[4] There is a third provision for venue that is irrelevant here.  28 U.S.C. § 1391(b)(3) provides "if there is no district
in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant
is subject to the court's personal jurisdiction with respect to such action."   Because both defendants reside in the
Southern District of Florida, venue is proper in that district at Section 1391(b)(3) is inapplicable and irrelevant.

---

**VENUE**

15.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 in that Defendants regularly conduct business in this district and/or a substantial part of the claims arose in this district.

---

(Compl. ¶ 15, ECF No. 1).  This lone allegation is insufficient for two reasons: (1) it fabricates a standard for venue that does not exist at law and (2) it is directly contradicted by the Complaint itself.

> 1.     *Venue in the Eastern District of Texas is Not Proper Under 28 U.S.C. § 1391(b)(1).*

While Plaintiffs do not specify which portion of the venue statute they are relying upon, it is clear on the face of the Complaint that Plaintiffs cannot rely upon 28 U.S.C. § 1391(b)(1).  The Complaint alleges that Partsites "is a Florida limited liability company, with a principal business address of 175 SW 7th Street, Unit 1704, Miami, Florida" while "Anderson…is an individual residing at 175 SW 7th Street, Unit 1704, Miami, Florida".  (Compl. ¶¶ 4, 5, ECF No. 1.)  Thus, the Eastern District of Texas is not "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located" and venue under Section 1391(b)(1) is only appropriate in the Southern District of Florida.

> 2.     *Venue in the Eastern District of Texas is Not Proper Under 28 U.S.C. § 1391(b)(2).*

Nor is venue proper in this district under Section 1391(b)(2).  Here, Plaintiffs attempt to blur the lines by alleging that "…Defendants regularly conduct business in this district…" (Compl. ¶ 15, ECF No. 1.)  Regularly conducting business in a district is not the test for whether venue is proper.  Thus, this statement of Plaintiffs is irrelevant and inoperative and does not serve to convey venue in the Eastern District of Texas.

The only allegation in the Complaint that matches any portion of the venue statute is the bare statement that "a substantial part of the claims arose in this district." *Id*. However, everything in the Complaint directly contradicts this conclusory statement and demonstrates that venue is proper in the Southern District of Florida, not the Eastern District of Texas.

Each cause of action contained in the Complaint is predicated upon the allegation that Defendants allegedly use various marks "in domain names and on websites used in connection with the online services for the marketing, advertising, promotion and sale of replacement parts and accessories for Toyota vehicles, and related services…" (Compl. ¶ 67, ECF No. 1.)[5] Plaintiffs dedicate two voluminous composite exhibits – Exhibits 2 (ECF No. 1-2) and 3 (ECF No. 1-3)– to providing documents related to providing alleged information regarding the websites at issue. Reviewing Exhibits 2 and 3 to the Complaint, shows that the websites alleged to be at issue in the Complaint[6] (collectively, the "Websites") are owned and located as follows:

| Website | Owner/Status | Location |
|---|---|---|
| Onlinetoyotaparts.com | Part Sites, LLC | **Miami, Florida** |
| Genuineoemtoyotaparts.com | Part Sites, LLC | **Miami, Florida** |
| Toyotapartsestore.com | Domains by Proxy | Unknown |
| 1sttoyotaparts.com | Domains by Proxy | Unknown |
| Toyota.partswebsite.com | Unknown | Unknown |
| Partswebsite.com | Part Sites, LLC | **Miami, Florida** |
| Toyota-parts-dealer.com | Unknown (not live) | Unknown |
| Toyotapartsdealer.com | Unknown (not live) | Unknown |

---

[5] This allegation is improperly incorporated into each and every cause of action pled in the Complaint.  *See* Compl. ¶¶ 74, 81, 89, 99, 107, 115, and 129, ECF No. 1.

[6] *See*, Compl. pp. 38, 39, ECF No. 1.

| Toyotaparts4cheap.com | Part Sites, LLC | **Miami, Florida** |
|---|---|---|
| Toyotapartswebsite.com | Part Sites, LLC | **Miami, Florida** |
| Toyotapartswholesale.net | Domains by Proxy | Unknown |
| Toyotaandlexusparts.com | Part Sites, LLC (not live) | **Miami, Florida** |
| Toyotapartsanytime.com | Part Sites, LLC | **Miami, Florida** |
| Premiertoyotaparts.com | Part Sites, LLC | **Miami, Florida** |
| Toyotaparts-store.com | Part Sites, LLC | **Miami, Florida** |

None of the websites listed by Plaintiffs are owned by a company located in the Eastern District of Texas and none of them are operated out of the Eastern District of Texas.  Moreover, none of the correspondence between Toyota Motor Sales, U.S.A., Inc. and Partsites, annexed as Exhibit 4 (ECF No. 1-4) to the Complaint, was sent from or to the Eastern District of Texas, the letters were all sent from Cincinnati, Ohio and sent to Miami, Florida.

While Plaintiffs make numerous allegations regarding their connections with the Eastern District of Texas,[7] other than a single, bare, unsupported statement, Plaintiffs have failed to make *any* allegations that "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated"[8] in the Eastern District of Texas.  On the other hand, *every* document attached to the Complaint shows that both the "events or omissions giving rise to the claim"[9] – the creation and operation of the Websites – occurred in either Miami, Florida or an unknown location, and that "a substantial part of property

---

[7] While ignoring the fact that plaintiff Toyota Motor Sales, U.S.A., Inc. is located in Cincinnati, Ohio.  *See* Compl, Ex. 4, ECF No. 1-4 (showing Toyota Motor Sales, U.S.A., Inc.'s address as 255 East Fifth Street, Suite 1900, Cincinnati, Ohio 45202).

[8] 28 U.S.C. § 1391(b)(2).

[9] *Id*.

that is the subject of the action is situated"[10] – the Websites themselves[11] – are located in either Miami, Florida or an unknown location.

Plaintiffs have failed to properly plead venue.  The allegations of the Complaint, and the exhibits attached thereto, when taken as true, show that there is no proper venue in the Eastern District of Texas and that venue actually lies in the Southern District of Florida.  The Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(3).

### C. __Alternatively, this Civil Action Should be Transferred to the Southern District of Florida.__

Alternatively, the Court may transfer this civil action to the United States District Court for the Southern District of Florida pursuant to either Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406 or 28 U.S.C. § 1404.

#### 1. *The Court Has the Inherent Power to Transfer This Matter Instead of Dismissing Pursuant to Fed. R. Civ. P. 12(b)(3).*

Instead of dismissing this civil action for improper venue, "[a] district court has discretion to either dismiss a plaintiff's claims or transfer the case, *sua sponte,* under 28 U.S.C. § 1406(a)." *Hamilton v. United Parcel Serv., Inc.*, No. 1:11-CV-240, 2012 WL 760714, at *6 (E.D. Tex. Feb. 13, 2012); *see also* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought.").  The Court may therefore transfer this civil action to the Southern District of Florida instead of dismissing the case entirely.

---

[10] *Id.*

[11] Plaintiffs' prayer for relief requests that the Court order that "[t]he domain name registrars be ordered to complete the transfer to Toyota of the registration for the domain names…and any other domain names, which include the name and mark TOYOTA and variants thereof owned by Defendants…"  Compl. p. 40 (all-caps in original), ECF No. 1.

2.      *This Civil Action Should Be Transferred to the Southern District of Florida Pursuant to 28 U.S.C. § 1404(a).*

Section 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a); *Optimum Power Solutions, LLC v. Apple, Inc.,* 794 F. Supp. 2d 696 (E.D. Tex. 2011). "[T]he underlying premise of §1404(a) is that courts should prevent plaintiffs from abusing their privilege [of choosing venue] under §1391 by subjecting defendants to venues that are inconvenient under the terms of §1404(a)." *In re Volkswagen of Am., Inc.,* 545 F.3d 304, 312-13 (5th Cir. 2008). While plaintiffs have the privilege of filing their claims in any judicial division appropriate under the general venue statute, "§1404(a) tempers the effects of the exercise of this privilege" by allowing courts to transfer civil actions to a more convenient venue. *Id.*

In evaluating convenience, the district court must weigh private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004). The private factors include: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive." *Id.* The public interest factors include: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or the application of foreign law." *Id.; see also Optimum Power Solutions,* 794 F. Supp. 2d at 700.

The plaintiff's choice of forum is "not a distinct factor in the venue transfer analysis;" rather, it merely puts the burden on the movant to show good cause for the transfer. *In re Volkswagen of Am.*, 545 F.3d at 314 ("[A] plaintiff's choice of forum corresponds to the burden

that a moving party must meet."). To show good cause, a moving party must "satisfy the statutory requirements and clearly demonstrate that a transfer is for the convenience of parties and witnesses, in the interest of justice." *Id*. at 315 (citation omitted). When the movant demonstrates that the transferee venue is clearly more convenient, "it has shown good cause and the district court should therefore grant the transfer." *Id*. Furthermore, if a party's presence in a venue "appears to be recent, ephemeral, and an artifact of litigation" it is subject to close scrutiny "to ensure that the purposes of jurisdictional and venue laws are not frustrated by a party's attempts at manipulation." *In re Zimmer Holdings, Inc.*, 2010 U.S. App. LEXIS 12939, at \*7 (citing *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1195 (2010)).

### a. This Action Could and Should Have Been Brought in the Southern District of Florida.

The Lanham Act states that venue is proper in "a judicial district where any defendant resides." *Pinnacle Label, Inc. v. Spinnaker Coating, LLC*, 3:09-CV-950-D, 2009 U.S. Dist. LEXIS 106135, at \*24 (N.D. Tex. November 12, 2009). Partsites is a Florida limited liability company with a principal place of business in Miami-Dade County, Florida (Compl. ¶¶ 4, 5, ECF No. 1), which is where all of its business records are maintained. Its registered agent, principals (including defendant Anderson, who is also a resident of Miami-Dade County), and all employees are all located in Miami-Dade County, Florida. All of Defendant's Partsites employees, officers, and managing agents work in Miami-Dade County, Florida. Accordingly, Defendants reside in the Southern District of Florida where venue is proper. *Id*.

### b. The Private Interest Factors Favor Transfer to the Southern District of Florida.

The bulk of the 'private interest factors' favor transfer to the Southern District of Florida.

### (1) The Relative Ease of Access to Sources of Proof.

The Southern District of Florida is clearly more convenient for all witnesses who will be

testifying on behalf of Defendants. *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 832 (E.D. Tex. 2002).  At this time, none of the key witnesses known to Defendants reside in Texas. Those witnesses, and their believed location of residence, are:

| Witness | Believed Residence |
|---|---|
| Scott Anderson | Miami, Florida |
| David Lemoie | Miami, Florida |
| Edgar Hernandez | Miami, Florida |
| Joseph Airport Toyota | Cincinnati, Ohio |
| Larry Miller Toyota | San Diego, California |
| Toyota of Orlando | Orlando, Florida |
| Monicelli Toyota | Philadelphia, Pennsylvania |
| Mossy Toyota | San Diego, California |
| Suburban Toyota | Farmington Hills, Michigan |

Likewise, any documents from Defendants that might be pertinent are located in Miami-Dade County, Florida. It is thus indisputable that the Southern District of Florida is more convenient for Defendants and its employee witnesses.  In *Optimum Power Solutions, LLC,* the Eastern District of Texas found that "in cases where no potential witnesses are residents of the court's state, favoring the court's location as central to all of the witnesses is improper.  Finally, this factor favors transfer when a "substantial number of material witnesses reside in the transferee venue" and no witnesses reside in transferor venue regardless of whether the transferor venue would be more convenient for all of the witnesses. *Optimum Power Solutions, LLC,* 794 F. Supp. 2d at 702 (*quoting In re Genentech, Inc.*, 566 F.3d 1338, 1344-45 (Fed. Cir. 2009)).

Meanwhile, Plaintiffs are a Japanese limited liability company based in the State of Japan

and a California corporation.  (Compl. ¶¶ 2, 3, ECF No. 1.)  The California corporation – Toyota Motor Sales, U.S.A., Inc. – alleges substantial ties to the State of Texas.  However, the documents attached to the Complaint at Exhibit 4 show that the only contact between Plaintiffs and Defendants came from Toyota Motor Sales, U.S.A., Inc.'s corporate offices (or a law firm) in Cincinnati, Ohio and were directed to Miami, Florida.  Therefore, there are no apparent witnesses or documents located in the Eastern District of Texas.

The law does not require that all parties and non-parties be located in a single judicial district in order for transfer to be appropriate. Rather the relevant standard is whether one venue is clearly more convenient than the other, and the relevant comparison is between the conveniences of the witnesses and access to sources of proof. Here, it is clear that the Southern District of Florida is the most convenient venue and this factor favors transfer.

(2)      <u>The Cost of Attendance for Willing Witnesses.</u>

The Southern District of Florida is a far less burdensome forum than the Eastern District of Texas for the bulk of Defendants' presently-known witnesses. *In re Volkswagen of Am.*, 545 F.3d at 317 ("it is an obvious conclusion that it is more convenient for witnesses to testify at home." (citation omitted)). For these prospective witnesses, testifying in their home district of the Southern District of Florida would clearly be more convenient and less costly than traveling more than 1300 miles to the Eastern District of Texas.  Similarly, taking, for example, the witness in Orlando, Florida, it is far more convenient for that witness to travel to the Southern District of Florida than the Eastern District of Texas.  This factor favors transfer.

(3)      <u>The Majority of the Evidence is Located in the Southern District of Florida.</u>

The ease of access to documents and similar sources of proof also favors transfer to the Southern District of Florida. As the Fifth Circuit explained, the mere fact that "access to some

sources of proof presents a lesser inconvenience now than it might have absent recent developments does not render this factor superfluous." *Id.* at 316.  To the contrary, "the sources of proof requirement is a meaningful factor in the analysis" of venue transfer. *Id.*; *see also Shared Memory Graphics, LLC v. Apple, Inc.*, Case No. 5:09-cv-05128, slip op. at 4 (W.D. Ark. May 27, 2010).

This factor clearly favors the Southern District of Florida. Courts have recognized that in patent cases, the bulk of the relevant evidence usually comes from the accused infringer. *In re Genentech*, 566 F.3d at 1345. Consequently, the place where the Defendants' documents are kept weighs in favor of transfer to that location. *Id*. And as discussed above, Defendants have their principal place of business and/or reside in the Southern District of Florida and all documents supporting their defense in their care, custody and control are located in the Southern District of Florida.

> ### c.     The Public Interest Factors Favor Transfer to the Southern District of Florida.

These factors weigh strongly in favor of transfer to the Southern District of Florida or are neutral.

> #### (1)     Court Congestion Favors Transfer.

The court congestion factor favors transfer. According to the most recent Federal Court Management Statistics the median time to trial for civil cases in the Southern District of Florida is three (3) months faster than the Eastern District of Texas. *See* United States Courts Federal Court Management Statistics (Profiles) 35, 92 (September 2018).

> #### (2)     Local Interests Strongly Favor Transfer.

In weighing this factor, courts should consider particularized local interests relating to the "controversies and events giving rise to a case" and disregard local interests that "could apply

virtually to any judicial district or division in the United States." *In re Volkswagen of Am.*, 545 F.3d at 318. "The preferred forum is that which is the center of gravity of the accused activity," the determination of which includes consideration of where the products at issue were designed and developed. *See Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 3-07CV2183-M, 2008 WL  3890495, at *3 (N.D. Tex. Aug. 22, 2008) (quotations omitted). Here, all of Defendants' products/business activities occurred in the Southern District of Florida, where it is headquartered. Thus, the residents of the Southern District of Florida have a particularized interested in the subject matter of this lawsuit.

(3)   <u>Familiarity With the Governing Law and Conflicts of Laws<br>are Neutral.</u>

The last two factors are neutral. There are no perceived conflicts of law that would cause one district to be preferable as compared to the other. Both this Court and a court in the Southern District of Florida are equally capable of applying federal and state law, as applicable to the claims in this case. *See, e.g., Kwik Goal, Ltd. v. Youth Sports Publishing Inc.*, No. 06 Civ. 395 (HB), 2006 WL 1517598, at *4 (S.D.N.Y. May 31, 2006) (stating choice of law should be accorded little weight on a motion to transfer venue because "federal courts are deemed capable of applying the substantive law of other states").

On balance, all factors weigh in favor of transfer to the Southern District of Florida or are neutral.  The Court should therefore transfer this civil action.

### D.      **The Complaint should be Dismissed as an Improper Shotgun Pleading**

"The most common type [of shotgun pleading]—by a long shot—is a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint."  *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015).

"As opposed to the 'short and plan statement' requirement contemplated by Rule 8, shotgun pleadings contain several counts within a complaint with each count 'incorporating by reference the allegations of its predecessors, leading to a situation where most of the counts (i.e., all but the first) contain irrelevant factual allegations and legal conclusions.'" *Moore v. Carrington Mortg. Servs., LLC*, No. 3:17-CV-3132-G-BN, 2018 WL 3853711, at \*3–4 (N.D. Tex. July 17, 2018), *report and recommendation adopted*, No. 3:17-CV-3132-G (BN), 2018 WL 3850635 (N.D. Tex. Aug. 13, 2018) (citations omitted).   "Such pleadings are subject to dismissal under Rule 12(b)(6)…particularly where, like here, 'the pleader heedlessly throws a little bit of everything into his complaint in the hopes that something will stick…'" *Id.* (citation omitted).

Here, Plaintiffs have filed a shotgun pleading by incorporating every preceding cause of action into every subsequent cause of action.  (Compl. ¶¶ 74, 81, 89, 99, 107, 115, and 129, ECF No. 1.)  This is particularly important where, as here, filing a shotgun pleading creates internal inconsistencies and confusion.  For example, Exhibit 1 to the Complaint shows plaintiff Toyota Jidosha Kabushiki Kaisha as the owner of all of the marks-in-suit while Exhibit 4 shows Toyota Motor Sales, U.S.A., Inc. claims to be the owner of those same marks.[12]  Only the registrant of a mark has standing to bring a lawsuit under the Lanham Act.[13]  Here, Plaintiffs have lumped two separate companies together, attached documents alternatively claiming that one or the other is the owner of the marks-in-suit, brought a cause of action for violation of Section 32 of the Lanham Act, and then incorporated that cause of action into every other cause of action in the Complaint.

---

[12] *See, e.g.,* Compl. Ex. 4 at p. 6, ECF No. 1-4, "This law firm is counsel to Toyota Motor Sales, U.S.A., Inc. ("**Toyota**")…[a]s you are well aware, Toyota is the owner of all right, title, and interest in the famous TOYOTA trademark."  (bold and all-caps in original).

[13] "Any person who shall, without the consent of the registrant…shall be liable in a civil action *by the registrant* for the remedies hereinafter provide."  15 U.S.C. § 1114(1) (emphasis supplied).

The marks-in-suit cannot be owned by both Toyota Jidosha Kabushiki Kaisha and Toyota Motor Sales, U.S.A., Inc., and distributors do not have standing to pursue claims of trademark infringement (and other claims as well).  *ICEE Distributors, Inc. v. J&J Snack Foods Corp.*, 325 F.3d 586, 598 (5th Cir. 2003)("It would be antithetical to the basic principles of trademark law to extend to a licensee the rights of an assignee without caution, since deeming a licensee an assignee would allow the assignee to hold the registered trademark owner liable under trademark law, rather than simply under contract law, for diluting the mark by utilizing a similar trademark in the assignee's area.").

The Complaint is the prototypical shotgun complaint, serially incorporating causes of action.  Moreover, by intermingling various concepts throughout the complaint, Plaintiffs have alternately alleged that they both own the marks-in-suit (an impossibility) and that they both have standing to bring suit (also an impossibility).  The Complaint should be dismissed as an impermissible shotgun pleading.

**E.** **The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Under the Fair Use Doctrine**

[Fair use] allows a defendant to defeat a claim of trademark infringement by establishing that: the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin. 15 U.S.C. § 1115(b)(4). Under this section, the fair-use defense forbids a trademark registrant from appropriating a descriptive term for his or her exclusive use to prevent others from accurately describing a characteristic of their goods…To assert a fair-use defense, a defendant must establish that it used the disputed term (a) descriptively, (b) fairly, and (c) in good faith…

*KS Cayton, LLC v. Hobby Lobby Stores, Inc.*, No. 6:15-CV-655, 2016 WL 7826650, at *4 (E.D. Tex. Sept. 12, 2016), *report and recommendation adopted,* No. 6:15-CV-655, 2017 WL 2240288 (E.D. Tex. May 23, 2017)(internal citations omitted).

> While it does not appear that the Fifth Circuit has directly addressed the question of whether the fair use defense may be raised on a Rule 12(b)(6) motion to dismiss, other courts have recognized that under certain circumstances a fair use determination can be made at the motion to dismiss stage…

*Estate of Barre v. Carter*, 272 F. Supp. 3d 906, 931 (E.D. La. 2017)(footnote omitted)(collecting cases).

Here, the face of the Complaint makes clear that any use of the marks-in-suit is fair use. The Complaint alleges that goods sold or offered for sale through the Websites are actual Toyota parts and accessories,

> Defendants...are making unauthorized use of Toyota's distinctive, well-known, and famous TOYOTA trademarks, in connection with the marketing, advertising, promotion, offer for sale and sale of *Toyota parts and accessories* and/or in connection with the offering of services, including, but not limited to, (i) *providing information* concerning Toyota motor vehicles and their parts, and (ii) relating to the development of e-commerce platforms for the sale of automotive parts…

(Compl. ¶ 9, ECF No. 1 (emphasis supplied).)  Thus, Plaintiffs have alleged that Defendants are utilizing Toyota marks to identify Toyota parts and accessories and in providing information concerning Toyota motor vehicles and their parts.  Because the products offered for sale through the Websites are authentic Toyota parts, offered for sale by authorized Toyota dealers and distributors, any alleged use of the marks-in-suit would be fair use and the Complaint should be dismissed for failure to state a cause of action upon which relief can be granted.

F.     **The Complaint Should Be Dismissed Pursuant to Fed. R. Civ. P. 12(b)(6) Under the First Sale Doctrine**

Related to the fair use defense is the first sale doctrine.  "As a general rule, trademark law does not reach the sale of genuine goods bearing a true mark even though the sale is not authorized by the mark owner .... Thus, a distributor who resells trademarked goods without change is not liable for trademark infringement." *Polymer Technology Corporation v. Mimran,* 975 F.2d 58, 61– 62 (2nd Cir. 1992).  "The Fifth Circuit follows this rule. In *Matrix Essentials, Inc. v. Emporium Drug Mart, Inc. of Lafayette,* 988 F.2d 587, 590 (5th Cir.1993), the court adopted the doctrine, stating that 'trademark law does not apply to the sale of genuine goods bearing a true mark, even if the sale is without the mark owner's consent.'"  *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839, 852 (N.D. Tex. 2009).

Here, again, Plaintiffs have alleged that the Websites are utilizing the marks-in-suit in conjunction with the sale of Toyota parts and accessories and providing information concerning Toyota motor vehicles and their parts.  (Compl. ¶ 9, ECF No. 1.)  While Plaintiffs are no-doubt unhappy that their authorized dealers have elected to use Partsites' e-commerce platform over Plaintiffs' own platform, the fact that authorized dealers have elected to sell authorized, authentic goods through a different channel does not give rise to any cause of action by Plaintiffs against Defendants.  The Complaint should be dismissed.

G.     **Alternatively, the Court Should Require a More Definite Statement be Filed.**

Defendants are aware that motions for more definite statement are generally disfavored by the Courts.  However, the instant matter is one where a more definite statement is appropriate.  "If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading."  Fed. R. Civ. P. 12(e).

As noted above, there are a number of internal inconsistencies and impossibilities in the Complaint as presently framed.   Plaintiffs have incorporated each cause of action into each subsequent cause of action, have alleged that both Plaintiffs own the marks-in-suit when only one can be the owner, and have brought causes of action in the name of both Plaintiffs when only one of the Plaintiffs can be the proper plaintiff.   Given these internal inconsistencies and impossibilities, a more definite statement should be required.

## V.   <u>CONCLUSION</u>

Toyota is using this lawsuit in an attempt to intimidate a startup-up competitor offering a product that Toyota declined to purchase but which is now outperforming Toyota's own product. Instead of attempting to compete fairly in the marketplace, Plaintiffs have elected to bring the instant civil action in the Eastern District of Texas, a venue that Plaintiffs' own documents and Complaint clearly show is an improper venue.   Because Defendants are located in Miami, Florida, the Websites at issue are owned in Miami, Florida, and the bulk of the witnesses, documents, and evidence in this civil action are located in Miami, Florida, this matter should be dismissed for improper venue, *sua sponte* transferred to the Southern District of Florida, or transferred to the Southern District of Florida for *forum non conveniens*.   Moreover, the Complaint should be dismissed because it is an impermissible shotgun pleading, and because the allegedly improper actions of Defendants are permitted both under the fair use doctrine and the first sale doctrine. Finally, the Complaint should be dismissed, and a more definite statement required, due to the internal inconsistencies and impossibilities in the Complaint, and the shotgun nature of the Complaint.

WHEREFORE, Defendants respectfully request the Court enter an order dismissing the complaint, or transferring this civil action to the United States District Court for the Southern District of Florida, or requiring that Plaintiffs provide a more definite statement, and for such other

and further relief as the Court deems appropriate.

Dated: February 7, 2019                              Respectfully submitted,

                                                     By:   _/s/Vincent J. Allen_____
                                                     Vincent J. Allen
                                                     State Bar No. 45,514
                                                     allen@cclaw.com
                                                     James A. Reed
                                                     State Bar No. 24102398
                                                     jareed@cclaw.com
                                                     **Carstens & Cahoon, LLP**
                                                     P.O. Box 802334
                                                     Dallas, TX 75380
                                                     972-367-2001 (Telephone)
                                                     972-367-2002 (Facsimile)

                                                     Daniel J. Barsky, Esq.
                                                     Florida Bar Number 0025713
                                                     *Pro Hac Vice* Forthcoming
                                                     dbarsky@shutts.com
                                                     **Shutts & Bowen LLP**
                                                     200 S. Biscayne Boulevard
                                                     Suite 4100
                                                     Miami, Florida 33131
                                                     p: 561.650.8518
                                                     f: 561.822.5527

                                                     **ATTORNEYS FOR DEFENDANTS
                                                     PARTSITES, LLC and SCOTT
                                                     ANDERSON**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that counsel for Plaintiffs was served with a copy

of this document via the Court's CM/ECF system on February 7, 2019.


        */s/ Vincent J. Allen*
        Vincent J. Allen