# EXHIBIT 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

Case No: 4:18-cv-00908

TOYOTA JIDOSHA KABUSHIKI
KAISHA, also doing business as TOYOTA
MOTOR CORPORATION, and TOYOTA
MOTOR SALES, U.S.A., INC.,

Plaintiffs,

v.

PARTSITES, LLC and SCOTT ANDERSON,

Defendants.

_____/

**DECLARATION OF DAVID P. LEMOIE IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS**

DAVID P. LEMOIE (the "Declarant"), deposes and states the following under oath:

1. I am the President of PartSites, LLC ("Partsites").

2. I make this declaration based upon personal knowledge, and in support of Defendants Motion to Dismiss the Complaint filed in this lawsuit (the "Motion to Dismiss.") More specifically, this declaration is made in support of the arguments set forth in the Motion to Dismiss that address the Defendants' arguments under Fed. R. Civ. P. Rule 12(b)(2) regarding lack of personal jurisdiction over the Defendants.

3. Partsites provides ecommerce technology to OE ("original equipment") franchised automotive dealers to facilitate the sale of genuine OE automotive parts and accessories. In connection therewith, Partsites builds websites with integrated e-catalogues to allow consumers to search for and purchase automotive parts and accessories based upon the

make, model, year, and trim of their vehicles. The e-catalogues for automotive parts are licensed for use by Partsites through a company known as Motor Information Systems (the "MIS Catalogues")with the express approval of the OE manufacturers, including Toyota, and contain listings only for genuine OE parts and accessories.

4. Partsites primary revenue model contemplates business agreements directly with OE franchised dealerships. In connection with these agreements, Partsites builds websites with e-commerce technology designed to facilitate the sale of OE parts and accessories by the dealerships. These websites are owned by the dealership and operated using technology licensed to the dealership by Partsites for a monthly fee. The technology platform licensed to the dealership includes a sophisticated administrative "back-office" allowing dealers to control pricing, shipping, website functionality, order management, and other related functions.

5. A secondary revenue model employed by Partsites uses a slightly different approach. In this scenario, Partsites itself owns the website used for the sale of parts and accessories. Nonetheless, a contractual relationship with an automotive dealer is still required. When using its own websites as a revenue model, Partsites licenses the use of the website and its corresponding technology to the dealership. The participating dealership contracts directly with end-users of the website to fulfill the parts and accessories orders placed by the consumer. The dealership is provided with log-in access to the website administrative "back-office" for order management and shipping. All payments made by the consumer are processed through the dealership's merchant gateway, and paid to the dealer directly. In sum, the dealership contracts with the consumer and handles each and every aspect of the parts and accessories sales transaction. Partsites is paid a monthly fee by the dealership in return for licensing the website and its corresponding technology to the dealership.

6. This secondary revenue model is the one underlying Toyota's claims in this lawsuit. Partsites owns and operates a number of domains, some of which are listed in the Complaint filed by Toyota in this case (the "Disputed Websites.") These Disputed Websites are, and have been, at all times relevant to this lawsuit, licensed to franchised Toyota dealerships, have deployed the MIS Catalogues, and have been used exclusively by the participating Toyota dealerships to sell genuine Toyota parts and accessories.

7. None of the Toyota dealerships contracting with Partsites for the use of the Disputed Websites are located in the state of Texas. The dealerships that have licensed the use of the Disputed Websites are identified as follows by name and location (the "Participating Dealers"):

Joseph Airport Toyota - Cincinnati, Ohio
Larry Miller Toyota - San Diego, California
Toyota of Orlando - Orlando, Florida
Conicelli Toyota - Philadelphia, Pennsylvania
Mossy Toyota - San Diego, California
Suburban Toyota - Farmington Hills, Michigan

8. Partsites has never sold any automotive parts and/or accessories in Texas or to any Texas resident using the Disputed Websites. Any and all parts and accessories sold through the Disputed Websites at anytime were sold by the Participating Dealers. Partsites has never knowingly interacted in any manner with any Texas residents regarding the use of the Disputed Websites and/or the sale of parts and accessories via the Disputed Websites.

9. Partsites does not have any offices in Texas. Partsites does not have any employees or independent contractors in Texas. Partsites conducts no targeted business in

Texas.  At present, Partsites does not have any contractual or business arrangements of any kind with any automotive dealerships in Texas.

       I DECLARE UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT.

_____
DAVID P. LEMOIE
DATED:  FEBRUARY 7, 2019